**MORGAN, LEWIS & BOCKIUS LLP**
(*A Pennsylvania Limited Liability Partnership*)
John McGahren
Stephanie Feingold
Drew Cleary Jordan
502 Carnegie Center
Princeton, NJ  08540
Tel:  609-919-6681
Fax:  609-919-6701
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRANBURY BRICK YARD, LLC**, <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE NAVY, and THE UNITED STATES DEPARTMENT OF THE ARMY,** <br><br> **Defendants.** | Civil Action No. <br><br> **COMPLAINT** |

Plaintiff Cranbury Brick Yard, LLC ("CBY" or "Plaintiff"), by way of Complaint against Defendants United States of America, the United States Department of the Navy, and the United States Department of the Army ("United States" or "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This is an action for cost recovery under Section 107(a), and, *in the alternative*, an action for contribution under Section 113(f)(3)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§9601-9675 *et seq*. ("CERCLA").

2. Plaintiff seeks to recover from the Defendants necessary costs of response that the Plaintiff has incurred in a manner consistent with the National Contingency Plan

("NCP"), 40 C.F.R. Part 300 *et seq.*, caused by the release or threatened release of hazardous substances on and adjacent to the former Unexcelled Chemical Corporation Site (the "Site"), located in Cranbury, New Jersey, and a declaratory judgment on liability for response costs in accordance with the Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), that will be binding on any subsequent action or actions by the Plaintiff against the Defendants to recover further response costs.

3. From approximately 1942 until approximately 1957, Unexcelled Manufacturing Company, Inc. and Unexcelled Chemical Corporation ("Unexcelled"), at the direction and control of the Defendants, manufactured large quantities of war material, in particular, munitions and explosives, and conducted other operations at the Site under circumstances in which, within the meaning of CERCLA, the Defendants owned or operated the Site and/or portions of the Site at the time of disposal of hazardous substances, and in which the Defendants, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Site.

4. In 1974 the Site, which at that time was vacant, was sold to Cranbury Development Corporation ("CDC").

5. Chemicals and hazardous substances have been found in the soil and groundwater at the Site, including munitions and explosives of concern ("MEC").

6. In or around December 2004, the New Jersey Department of Environmental Protection ("NJDEP") issued a Directive identifying the Site as a location where there is, or has been, a potential for a release of contaminants, which may present an

unacceptable risk to the public health, safety, welfare or the environment, and directing the parties named therein to enter into an ACO memorializing their commitment to remediate the Site.

7. Accordingly, in early 2005, the New Jersey Department of Environmental Protection ("NJDEP") entered into an administrative consent order ("ACO") requiring the parties named therein (Maxxam Group, Inc. ("Maxxam") (as the alleged corporate successor to Unexcelled), then-owner CDC, and CDC's financier, Credit Agricole Asset Management ("CAAM")) to investigate and remediate environmental conditions at the Site.,

8. The ACO expressly acknowledged that it, and the work done thereunder, is, to the greatest extent possible, consistent with CERCLA and with the NCP.

9. In or around early 2006, CBY purchased the Site from CDC. As part of that purchase, CBY assumed CDC's cleanup responsibilities, as well as the cleanup responsibilities of Credit Agricole Asset Management ("CAAM"), as guarantor of CDC, and has continued the cleanup of the hazardous materials remaining on the Site that had been begun by CDC.

10. The NJDEP consented to CDC's transfer of its cleanup obligations to CBY via an amendment to the ACO, which amendment was executed in or around February 2006.

11. All disposal of hazardous substances at the Site occurred prior to Plaintiff's purchase of the Site, and parties other than the Plaintiff are the sole cause of contamination.

12. Plaintiff has been required to expend response costs, and will continue to be required to expend response costs, at the Site, as a result of Defendants' ownership, use, and activities on the Site.

13. Plaintiff is entitled to recover from Defendants those response costs that relate to the period during which Defendants owned or operated the Site and the equipment, wastes and facilities at the Site, and/or arranged for disposal or treatment of hazardous substances at the Site. Through this suit, Plaintiff seeks to recover those response costs from Defendants.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and under 28 U.S.C. § 1331. In addition, the Declaratory Judgments Act, 28 U.S.C. § 2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant Plaintiff declaratory relief.

15. Venue in this Court is proper pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because Defendants may be found, and because the releases or threatened releases alleged herein occurred, in the District of New Jersey.

## PARTIES

16. Plaintiff CBY is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in Highlands Ranch, Colorado.

17. Defendants United States of America, the United States Department of the Army and the United States Department of the Navy, acting through various departments, agencies, and instrumentalities, owned or operated the Site (and/or portions of the Site identified herein, and/or by contract, agreement or otherwise, arranged for the disposal or treatment, or arranged with a transporter for the transport for disposal or

      treatment, of hazardous substances owned or possessed by Defendants at the Site. Defendants may be found, conduct affairs, and render services within the District of New Jersey.

18. The Site consists of approximately 395 acres located in the Township of Cranbury, Middlesex County, New Jersey, as more fully described on Exhibit 1 attached hereto, including the buildings, equipment, and materials used on those 395 acres for the manufacture of munitions and explosives between approximately 1942 and 1957.

## FACTUAL BACKGROUND

### A. The Site

19. At various times during and after World War II, Defendants owned or operated the Site and/or portions of the Site identified in this Complaint, and/or managed, directed or conducted operations at the Site, including operations specifically related to the leakage or disposal of materials within the meaning of "hazardous substances" as defined in CERCLA.

### B. Defendants' Activities at the Site

20. Prior to the entry by the United States into World War II, and then before, during and after World War II, Congress enacted broad statutes, which the Defendants implemented through the issuance of regulations and executive orders, designed to mobilize the United States government and economy, in the interests of national defense, to build and operate plants and facilities for the manufacture of war material, and to buy or otherwise control facilities, material, equipment, and supplies deemed by the Defendants to be strategic and critical. Collectively, these statutes, regulations,

and executive orders provided the Defendants with extraordinary powers to control the economy and individual plants and facilities in the interests of national defense and to compel the production of products critical to the war effort.

21. During World War II, and at various times before and after World War II, Defendants assumed control over much of the nation's wartime economy and exercised control over the nation's industry by enactment of legislation, by promulgation of regulations and executive orders, and through numerous agencies, corporations and entities established by the Defendants. Defendants exercised this control by, among other things, establishment and utilization of allocations, priorities, and compulsory orders and expansions.

22. During and at various times after World War II, in order to satisfy its military needs, Defendants required Unexcelled to produce munitions at the Site for Defendants' use in national defense.

23. During and after World War II, in order to satisfy its military needs, Defendants acquired and held title to property at the Site.

24. During and after World War II, in order to satisfy its military needs, Defendants required Unexcelled to expand existing facilities and construct new facilities at the Site, owned by Defendants, for the manufacture of various products for Defendants' use in the national defense.

25. During and after World War II, in order to satisfy its military needs, Defendants supplied raw materials owned by Defendants, which raw materials contained hazardous substances, for Unexcelled to use to manufacture various products at the Site for Defendants' use in the national defense.

26. During and after World War II, in order to satisfy its military needs, Defendants managed Unexcelled's daily operations at the Site, requiring the production of various products specified by Defendants for Defendants' use in national defense.

27. The requirements imposed by Defendants on Unexcelled and the operations at the Site were memorialized in various agreements ("Contracts") prepared by Defendants.

C.  **History of the Site**

28. The Site began operation in approximately 1942 as a plant producing munitions, including flares and fuses for the military.

29. In approximately 1942, following the entry of the United States into World War II, the manufacture of munitions and ordnance was an important part of the war effort.

30. During World War II, government-owned machinery and equipment was installed at the Site. Machinery, equipment, and raw materials provided and owned by Defendants, were utilized at the Site for production of war materials for the United States. Employees and agents of the Defendants were stationed by Defendants at the Site, and the Defendants oversaw every aspect of the work in progress at the Site, including accepting and rejecting finished batches.

31. Additional machinery and equipment used by Unexcelled at the Site was loaned to Unexcelled by the United States government through a special government loan from the Federal Reserve in the amount of $1.25 million, which provided financing to assist Unexcelled in meeting obligations of Army contracts.

32. The government's operation and control of Unexcelled's facility at the Site is manifest from its position as Unexcelled's exclusive client and from the

      government's controlling and directing all output from Unexcelled's facility at the Site, setting production goals, supplying materials and reviewing final products.

33. During World War II, and at various times after World War II, at the direction and under the control of Defendants, Unexcelled produced and supplied the military needs of the Defendants from the Site, using machinery owned by the Defendants and materials supplied by the Defendants, on equipment owned by Defendants.

34. Representatives and agents of the United States managed, controlled and directed the operation of the Site and directed the disposal of hazardous substances owned by the United States at the Site. Specifically, in 1955, the Office of the Chief of Navy Ordinance ordered on-site disposal of 400 government-owned drums containing black powder waste from munitions manufacturing at Unexcelled.

35. Production of munitions at the direction of and for the account of the Defendants continued at the Site during and after World War II.

36. The United States continued to exercise control over Unexcelled's production at the Site until approximately 1957, when the facility was demolished.

37. From 1967 until its sale to CDC in 1974, the property was owned by various individuals and companies.

**D. Discovery of Hazardous Substances and Environmental Response Actions at the Site**

38. Starting in 2003, and continuing to the present, NJDEP has conducted environmental investigations at the Site.

39. Chemicals and hazardous substances have been found in the soil and groundwater at the Site, including MEC.

40. On January 28, 2005, the NJDEP entered into an ACO with Maxxam and CDC (and CDC's financier, CAAM), which provided for investigation and remediation of environmental conditions at the Site.

41. On February 16, 2006, as part of its purchase of CDC's interests in the Site, Plaintiff entered into an Administrative Consent Order Amendment ("ACO Amendment"), pursuant to which Plaintiff assumed CDC's cleanup obligations under the ACO.

E. **Plaintiff's Purchase, Ownership, and Remediation of the Site**

42. Prior to its purchase of the Site, Plaintiff conducted all relevant and appropriate inquiries, including extensive environmental due diligence with the assistance of environmental experts. Plaintiff's environmental due diligence included, but was not limited to, review of environmental data, records and reports related to the Site, title and judicial records related to environmental liens, and other ascertainable records, as well as the conduct of interviews and site reconnaissance.

43. Upon completion of Plaintiff's environmental due diligence, the sale of the Site to CBY was finalized, in or around 2006. Contemporaneously with the finalization of the sale of the Site, CBY entered into the ACO Amendment.

44. All disposal of hazardous substances at the Site occurred prior to Plaintiff's purchase of the Site, and parties other than the Plaintiff are the sole cause of contamination. Plaintiff is not affiliated with any other person or entity that is potentially responsible for response costs or contamination of the Site through any direct or indirect contractual, corporate, or financial relationship, excluding any such relationship that is created by the instruments by which title of the Site was conveyed or financed, or itself liable for any release of contamination at the Site.

45. Since the Plaintiff's purchase of the Site, the Site has essentially lay vacant, and any activities on the Site have been limited to investigation and removal of contamination, as overseen by NJDEP. Plaintiff has continued to comply with all land restrictions and institutional controls through its various agreements with, and in accordance with oversight of, the NJDEP. Plaintiff has further taken all reasonable steps regarding the release of any hazardous substances, including work to prevent any threatened or continuing release, as well as assisting in limiting any human, environmental or natural resource exposure to all hazardous substances released before Plaintiff's ownership of the Site.

46. Plaintiff has fully cooperated with and assisted all government agencies, including the NJDEP, and authorized personnel to conduct appropriate response work, including complying with all requested information requests and administrative subpoenas when received, and providing all legally required notices.

47. By letter dated April 21, 2009, NJDEP approved the Remedial Action Work Plan ("RAWP") for the Site. In that approval, NJDEP expressly stated that "the remediation effort as defined in the RAWP may proceed at this time with appropriate permits."

48. As required by the NJDEP's April 21, 2009 conditional RAWP approval letter, CBY obtained NJDEP Individual Freshwater Wetlands and Flood Hazard Area Permits on or about January 2013, which were required for implementation of the Remedial Action.

49. As of the date of this Complaint, Plaintiff has incurred environmental response costs at the Site. In particular, Plaintiff has incurred costs remediating the Site in

accordance with the ACO (pursuant to its cleanup obligations assumed through the Amended ACO), and in a manner consistent with the NCP. Plaintiff will be required to expend additional future response costs to complete the work in accordance with the requirements of the NJDEP pursuant to the Amended ACO.

### F. Defendants' Control of the Site

50. Through its control of the wartime economy in general, and through the Contracts in particular, Defendants exercised actual, substantial, and pervasive control over the Site and the activities conducted on the Site during and after World War II, including managing, directing and conducting operations specifically related to the leakage or disposal of hazardous waste, and decisions about compliance with environmental regulations.

51. Defendants required Unexcelled to undertake war production work at the Site and expand the facility to accommodate Defendants' war-time needs.

52. Defendants supplied substantial quantities of the machinery, equipment, and other facilities, as well as the raw materials, required for the production of war material at the Site.

53. Defendants directed that all machinery, equipment, and other facilities be operated at peak capacity at the Site.

54. Defendants mandated the specific nature and volume of the products manufactured at the Site, as well as controlled the production processes utilized at the Site without regard to the uses the Plaintiff would have otherwise made at the Site.

55. Defendants mandated the purchasers, the quantities to be purchased, and the purchase price of the products manufactured at the Site.

56. Defendants' inspectors were authorized by Defendants to make determinations to accept or reject workmanship or materials the inspectors unilaterally deemed to be acceptable or unacceptable.

57. Defendants exercised day-to-day control over the labor force employed at the Site by, among other things, dictating minimum wage and maximum work hour requirements; reviewing and approving or disapproving salary increases; making hiring and firing decisions; resolving labor disputes; granting draft deferments; recruiting workers directly; directing terminations of employment; and ordering transfers of employees from the Site to other government-owned facilities.

58. Defendants mandated the security measures to be taken at the Site, including the selecting and deploying of personnel; recruiting and training of patrol forces; mandating the use of protective fencing and lighting; and controlling access to the Site in a manner that limited access to persons approved by Defendants.

59. Defendants held and retained ownership of machinery, equipment, and other facilities, as well as raw materials, work in progress, and finished products produced at the Site.

60. Defendants retained and exercised the authority to direct the disposal, including the means and methods of disposal, of waste, scrap, defective or unused property at the Site.

61. Defendants retained and exercised the authority to provide consultation and to control the means, methods, and locations for the treatment or disposal of wastes generated during the course of operations at the Site.

G.    **Defendants' Ownership of the Site**

62. Defendants were the owners of the Site, or portions of the Site (including the equipment, facilities, and wastes thereon), within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of.

### H. Defendants' Operation of the Site

63. Defendants were the operators of the Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of, because Defendants managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

### I. Defendants' Arrangement for Disposal of Hazardous Substances

64. Defendants arranged for the disposal or treatment of hazardous substances at the Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), because Defendants, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances owned or possessed by Defendants at the Site; and/or Defendants owned and supplied raw materials containing hazardous substances for use in production at the Site. At the time hazardous substances were released, Defendants owned or controlled the work done at the Site where the generation of hazardous substances was inherent in the production process conducted at the Site, and Defendants were aware of the release of hazardous substances at the Site.

**COST RECOVERY LIABILITY**
**UNDER CERCLA SECTION 107(a)**

65. Defendants' past handling, storage, treatment, transportation, or disposal of solid or hazardous waste at the Site has resulted in an actual or threatened release of

hazardous substances at the Site. NJDEP has concluded, pursuant to Paragraphs 13-14 of the Directive and Notice to Insurers issued by the NJDEP to Maxxam, CDC, and the United States Department of the Navy on December 29, 2004 ("Directive and Notice to Insurers") that there is, or has been, a potential for a release of contaminants at or from the Site, which may present an unacceptable risk to the public health, safety, welfare or the environment, and which is subject to corrective action.

66. Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any "covered person . . . shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan," implying a right of contribution among jointly liable parties and the right of any person who has incurred "necessary costs of response" that are "consistent with the national contingency plan" to recover from any "covered person" who is liable under CERCLA the covered person's equitable share of such response costs.

67. Defendants are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

68. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

69. Releases or threatened releases of hazardous substances into the environment have occurred at the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

70. Plaintiff has undertaken, and continues to undertake, response actions at the Site in response to releases or threatened releases of hazardous substances, and has incurred and is incurring necessary costs of response consistent with the NCP.

71. Prior to the purchase of the Site, Plaintiff completed extensive environmental due diligence. Plaintiff acquired the Site after the release, disposal, or placement of contamination on the property and have continued to exercise due care with respect to such substances. Parties other than the Plaintiff are the sole cause of the contamination. Plaintiff has continued to work productively and in accordance with all government authorities in its efforts to remediate the prior contamination on the Site.

### FIRST CLAIM FOR RELIEF:
### COST RECOVERY UNDER CERCLA 107(a) BASED ON DEFENDANTS' OWNER, OPERATOR, AND ARRANGER LIABILITY UNDER CERCLA

72. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. Section 107(a) of CERCLA provides that necessary costs of response consistent with the NCP may be recovered from owners, operators, and arrangers within the meaning of Section 107(a)(2) of CERCLA.

74. At various times during and after World War II hazardous substances were disposed of at the Site at the time Defendants owned or leased parts, or all, of the Site. As such, Defendants are persons who owned the Site at the time of disposal of hazardous substances at the Site, and therefore are persons who owned the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

75. At various times during and after World War II, hazardous substances were disposed of at the Site at the time Defendants managed, directed or otherwise conducted operations at the Site, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances. As such,

      Defendants are persons who at the time of disposal of hazardous substances operated the Site, and therefore are operators of the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

76. Defendants are liable for the Site under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the Site.

77. Defendants are liable as owners, operators, and arrangers within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

78. Pursuant to Sections 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), Plaintiff is entitled to cost recovery from Defendants in connection with the Site, and all response costs incurred by Plaintiff.

**SECOND CLAIM FOR RELIEF (IN THE ALTERNATIVE): CONTRIBUTION UNDER CERCLA 113(f) BASED ON DEFENDANTS' OWNER, OPERATOR, AND ARRANGER LIABILITY UNDER CERCLA**

79. Plaintiff repeats and realleges the allegations in paragraphs 1 through 78 of this Complaint as if fully set forth herein

80. Section 113(f)(3)(B) of CERCLA provides that a "person who has resolved its liability to the United States or a State for all or some of a response action or for some of all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party" to the settlement. 42 U.S.C. § 9613(f)(3)(B).

81. Plaintiff re-asserts, as alleged above, that its entry into the ACO Amendment was for the sole purpose of transferring CDC's cleanup obligations under the original ACO to Plaintiff, and that the ACO Amendment did not, nor was it intended to, act as a partial

settlement of CERCLA liability between Plaintiff and NJDEP. If this Court nonetheless determines that Plaintiff's entry into the ACO Amendment constitutes a settlement within the meaning of CERCLA Section 113(f)(2), 42 U.S.C. 9613(f)(2), however, then Plaintiff is entitled to contribution from Defendants pursuant to CERCLA 113(f)(3)(B), 42 U.S.C. 9613(f)(3)(B), for the costs of Plaintiff's remediation of the Site; and all response costs incurred by Plaintiff, or for which Plaintiff is deemed liable, should be allocated between Defendants, Plaintiff, and any other parties deemed liable using such equitable factors as the court determines are appropriate pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. 9613(f)(1).

82. If Plaintiff is liable for future response costs under Section 107(a) of CERCLA in connection with the Site, then, pursuant to CERCLA 113(f)(3)(B), 42 U.S.C. 9613(f)(3)(B), Plaintiff is entitled to contribution from Defendants, and all response costs Plaintiff will incur, or for which Plaintiff is deemed liable, including damages for injury to natural resources, should be allocated among Defendants, Plaintiff, and any other parties deemed liable using such equitable factors as the court determines are appropriate.

83. Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and Sections 113(f)(3)(B) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1), Plaintiff is entitled to contribution from Defendants as the former owner of the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and all, or a portion of, response costs incurred by Plaintiff or to be incurred by Plaintiff.

84. Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and Sections 113(f)(3)(B) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1),

        Plaintiff is entitled to contribution from Defendants as the operator of the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and all, or a portion of, response costs incurred by Plaintiff or to be incurred by Plaintiff.

85. Pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), and Sections 113(f)(3)(B) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1), Plaintiff is entitled to contribution from Defendants as persons who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the Site within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), and all, or a portion of, response costs incurred by Plaintiff or to be incurred by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants as follows:

(1) Holding Defendants liable, and any other persons found to be liable, for all response costs incurred at or with respect to the Site pursuant to Sections 107(a)(4)(B), 42 U.S.C. §§ 9607(a)(4)(B), and issuing an Order requiring Defendants to pay such amounts to Plaintiff; and

(2) Alternatively, if this Court determines that Plaintiff's entry into the ACO Amendment constitutes a settlement within the meaning of CERCLA Section 113(f)(2), 42 U.S.C. 9613(f)(2), then Plaintiff is entitled to allocation among Plaintiff and Defendants, and any other persons found to be liable, of all response costs incurred at or with respect to the Site pursuant to Section 113(f)(3)(B), 42 U.S.C. 9613(f)(3)(B), for the costs of Plaintiff's remediation of the Site using such equitable factors as the court determines are appropriate pursuant to

Section 113(f)(1) of CERCLA, 42 U.S.C. 9613(f)(1), and issuing an Order requiring Defendants to pay such amounts to Plaintiff; and

(2)  Entering a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against Defendants and in favor of Plaintiff declaring, adjudging, and decreeing that Defendants are liable to Plaintiff for response costs at the Site, such judgment to be binding on any subsequent action or actions to recover further response costs;

(3)  Awarding Plaintiff prejudgment and post judgment interest; and

(4)  Awarding Plaintiff any other such relief as the Court may deem just and proper.

Respectfully submitted,

/s/ John McGahren_____
John McGahren
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
jmcgahren@morganlewis.com
sfeingold@morganlewis.com
djordan@morganlewis.com
609.919.6641 (phone)
609.919.6701 (fax)
*Attorneys for Plaintiff Cranbury Brick Yard, LLC*

Dated: April 20, 2015