**MORGAN, LEWIS & BOCKIUS LLP**
(*A Pennsylvania Limited Liability Partnership*)
John McGahren
Stephanie R. Feingold
Mark A. Fiore
502 Carnegie Center
Princeton, NJ  08540
Tel:  609-919-6681
Fax:  609-919-6701
*Attorneys for Plaintiff Cranbury Brick Yard LLC*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRANBURY BRICK YARD, LLC,**<br><br>PLAINTIFF,<br><br>v.<br><br>**UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE NAVY, and THE UNITED STATES DEPARTMENT OF THE ARMY,**<br><br>DEFENDANTS. | Hon. Brian R. Martinotti<br><br>Civ. Action No. 15-2789 (BRM) (LHG)<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. ARGUMENT ......................................................................................... 3

    A. The Government Is Liable in Connection with Napalm Bombs on the Site ........................................................................................ 3

    B. The Government is Liable Concerning the Black Powder Drums .......... 5

    C. The Government Is Liable For Tetryl Contamination ............................. 7

    D. The Government is Liable in Connection with TCE Contamination ................................................................................... 9

    E. The 1954 Explosion Resulted in Releases and/or Disposals of Hazardous Substances at the Site ............................................... 10

    F. The Government's Other Arguments Are Misplaced ............................ 12

        1. The Government raises no triable issues of fact regarding CBY's bona fide prospective purchaser status ............................. 12

        2. Compliance with the NCP is irrelevant at this stage .................... 15

III. CONCLUSION .................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 1

*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*,
    1995 WL 866395 (E.D. Cal. Nov. 15, 1995) ......................................................... 3

*Basic Management Inc. v. U.S.*,
    569 F. Supp. 2d 1106 (D. Nev. 2008) .................................................................. 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 1

*Gould, Inc. v. A & M Battery and Tire Service*,
    954 F. Supp. 1014 (M.D. Pa. 1997) ....................................................................... 7

*T & E Industries, Inc. v. Safety Light Corp.*,
    680 F. Supp. 696 (D.N.J. 1988) ...................................................................... 3, 15

*Williams v. Borough of West Chester*,
    891 F.2d 458 (3d Cir. 1989) ............................................................................. 1, 2

**STATUTES**

42 U.S.C. § 9601(22) ..................................................................................................... 4

I.      INTRODUCTION

CBY demonstrated in its Motion for Summary Judgment (Dkt. 51)[1] that the Government is liable under CERCLA based upon admissible evidence in the form of documents, witness testimony, and physical evidence showing that: the Government owned certain equipment and other facilities at the Site; hazardous substances were released from the Government-owned equipment and other facilities; hazardous substances were disposed of at the Site as an inherent part of the munitions manufacturing process; the Government knew that disposal of hazardous substances at the Site was an inherent part of the munitions manufacturing process; the Government specifically intended and contracted for hazardous substances to be disposed of at the Site; and, finally, as a result, CBY incurred response costs consistent with the NCP.

To avoid summary judgment the Government was required to present "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), based upon "concrete evidence from which a reasonable juror could return a verdict' in the Government's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). To satisfy its burden, the Government needed to identify "more than a mere scintilla of evidence" in support of its contentions. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Unsupported assertions, speculation,

---

[1] Defined terms shall have the same meaning as in CBY's Moving Brief.

and conclusory assertions are insufficient. *Id.* The Government has failed to carry its burden because its Opposition identifies *no contrary evidence* that creates a triable dispute of fact.

For example, the Government does not dispute that it contracted to have millions of Government-owned napalm bombs refurbished at the Site and that CBY removed almost six hundred abandoned napalm bombs during the cleanup. Despite these facts, the Government opposes summary judgment because, it contends, CBY has no definitive proof that the Government owned the napalm bombs or that the bombs were disposed of at the Site.

The Government's argument is manifestly insufficient. It is not enough for the Government to criticize the quality or quantity of CBY's evidence. CBY satisfied its burden, which shifted the burden to the Government and required the Government to make a genuine evidentiary showing of its own. But the Government fails to do so, offering *no evidence* in support of the frightening suggestion that some entity *other than the Government* might have owned six hundred napalm bombs. The Government similarly identifies *no evidence* to rebut CBY's evidence that the bombs were disposed of at the Site when the Government abandoned them there fifty years ago.

The same holds true for each of the other facilities and/or hazardous substances at the Site for which the Government is responsible, including among others things: abandoned black powder drums, explosive tetryl dust contamination, and TCE contamination. In each case, the Government similarly fails to identify any

evidence in support of its arguments. – a fact only emphasized by the Government's 11th-hour attempt to create an issue of fact through its use of improper "expert" affidavits providing previously undisclosed opinion well outside the scope of either's prior opinion. Because the Government has failed to satisfy its evidentiary burden to demonstrate a genuinely disputed issue of material fact, this Court should grant CBY's Motion and enter summary judgment that the Government is liable under CERCLA.

## II.  ARGUMENT

### A.  The Government Is Liable in Connection with Napalm Bombs on the Site.

The uncontroverted evidence shows, and the Government admits, that the Government contracted for refurbishment of over 2 million napalm bombs at the Site, and that hundreds of thousands of the bombs were delivered to the Site before it ceased operating. (Defendants' Responses and Supplemental Statement of Facts ("Gov't SSOF") ¶¶ 100-01). It also is undisputed that CBY removed nearly six hundred abandoned napalm bombs from the Site during the cleanup. (Gov't SSOF ¶¶ 106-08). These facts prove that the Government is liable under CERCLA as an "owner" of facilities at or from which hazardous substances were "released." The Government owned the napalm bombs, which are "facilities" containing hazardous substances. *See T & E Industries, Inc. v. Safety Light Corp.,* 680 F. Supp. 696, 708 (D.N.J. 1988) ("'Facility' is broadly defined and includes almost every place a hazardous substance could find its way into."); *Atchison, Topeka & Santa Fe Ry. Co. v. Brown &*

3

*Bryant, Inc.*, 1995 WL 866395 (E.D. Cal. Nov. 15, 1995) (containers of hazardous substances are facilities). The abandonment of the bombs at the Site was a "release" of a hazardous substance and/or a disposal at the Site for CERCLA purposes, because the bombs were sealed containers of a hazardous substance—napalm—and "the abandonment or discarding of … closed receptacles containing any hazardous substance or pollutant or contaminant" is a "release" of a hazardous substance within the meaning of CERCLA. 42 U.S.C. § 9601(22).

In response, the Government contends that a triable fact issue exists because there is no "definitive evidence" that the Government owned the napalm bombs located at the Site. Defendants' Memorandum of Law in Opposition to CBY's Motion for Summary Judgment ("Gov't Opp. Br.") at 7-8; Gov't SSOF ¶ 106-7, 145. This argument is meritless. For obvious reasons, the Government identifies no evidence for the implausible—and alarming—notion that *someone else* might have owned the arsenal of napalm bombs abandoned at the Site. Indeed, even the Government's own expert admitted that the Government at least "likely" owned the "napalm bombs" being "renovated" by Unexcelled. (CBY Ex. 20; Gov't SSOF ¶ 105). In the absence of any contrary evidence the Government cannot carry its burden on summary judgment. The Court should find as a matter of law, based on the uncontradicted evidence that the Government owned the napalm bombs removed from the Site.

The Government also erroneously argues that a "lack of admissible evidence concerning disposal" of the bombs presents a triable dispute of fact. (Govt. Opp. Br. at 8). It is indisputable, however, that the bombs were abandoned at the Site fifty years ago when the facility ceased operations. The Government identifies no evidence of its own that would tend to show the napalm bombs somehow were *not disposed* of at the Site. Accordingly the Government has failed to carry its burden on summary judgment on this issue as well.

No more is necessary to establish the Government's "owner" liability as a matter of law. The uncontroverted evidence shows that the Government owned facilities (the napalm bombs) located at the Site, there was a "release" of a hazardous substance (napalm) at or from the Government-owned facility (the abandonment of the bombs at the Site), and CBY incurred removal costs as a result. Additionally, the Government also is liable as an "arranger" in connection with the napalm bombs, because in addition to being "facilities," the bombs themselves and their contents may be regarded as "hazardous substances." The uncontroverted evidence shows that the Government knowingly and intentionally arranged for the bombs to be disposed of at the Site by contracting for the bombs to be refurbished at the Site, delivering them to the Site to be refurbished, and finally abandoning them at the Site.

**B.     The Government is Liable Concerning the Black Powder Drums.**

According to the uncontroverted evidence, in 1955 the Government arranged for black powder drums to be disposed of at the Site in an "isolated area." (CBY's

5

Statement of Facts ("CBY SOF") ¶¶ 130-136, Exhs. 77-81). The Government is liable under CERCLA in connection with the black powder drums as an "owner" and/or as an "arranger" because, just as with the napalm bombs, the black powder drums are "facilities" that contained a hazardous substance (the black powder residue) and a "release" occurred upon the abandonment/disposal of the drums at the Site.

The Government resists summary judgment here based on speculation that some other, unknown entity could have furnished and arranged for the disposal of the black powder drums that were unearthed and removed from the Site. It is at least theoretically possible, the Government reasons, because the Site's historical documents (CBY SOF ¶¶ 130-136) do not explicitly refer to black powder drums as being "government-furnished." In fact, the Government is mistaken. Government correspondence from the Site consistently refers to "government-owned" black powder drums and to "black powder" generally as a "government-furnished" item. (CBY SOF ¶¶ 130-136, Exhs. 77-81). More importantly, the Government identifies *no evidence* in support of its surmise that, possibly, some other entity could have owned and/or arranged for the disposal of the black powder drums. The Government therefore fails to carry its evidentiary burden on summary judgment.

Undeterred, the Government speculates yet further. According to the Government, the drums that were located on and removed from the Site might not, in fact, be the same black powder drums that the Government arranged to have "taken to an isolated area and disposed of" in 1955. Since there is no way to identify

6

the specific "isolated area" where the Government ordered the drums to be buried in 1955, the Government postulates, it is at least *possible* that the black powder drums referenced in its 1955 disposal actually were disposed of somewhere else. (Gov't Opp. Br. at 14). Such freewheeling speculation is insufficient on summary judgment.

The Government has no evidence to the contrary, and its speculation and wishful thinking are insufficient to defeat summary judgment. *See Gould, Inc. v. A & M Battery and Tire Service*, 954 F. Supp. 1014 (M.D. Pa. 1997) (holding that defendant's deposition testimony of a 10% possibility that batteries bought by facility ended up at another site did not raise genuine issue of material fact precluding imposition of arranger liability as a matter of law.) By comparison, the evidence is clear that the Government directed Unexcelled to dispose of 400 drums of black powder, and that there were facilities at the Site (such as the burning ground) utilized for disposal of ordnance and hazardous materials; it is pure speculation to suggest it "could have been" disposed of somewhere else. CBY has introduced evidence of drums found and removed from the Site, as well as evidence of MEC containing black powder disposed of at the Site. *See, e.g.*, CBY SOF ¶ 138, Ex. 82; CBY's Response to Defendants' Supplemental Statement of Facts ("RSOF") ¶ 364. In the absence of any contrary evidence, judgment as a matter of law must be granted against the Government.

      **C.**    **The Government Is Liable For Tetryl Contamination.**

Tetryl is a hazardous substance used to make explosive charges. Tetryl dust is an unavoidable byproduct of manufacturing munitions with tetryl. It is undisputed

7

that CBY identified tetryl at the Site during the cleanup. (Gov't SSOF ¶ 155, Exhs. 5, 82; CBY RSOF ¶ 354) The uncontroverted evidence also shows that the Government owned equipment at the Site that was used for collecting and disposing of tetryl dust. (CBY SOF ¶¶ 56-58, Exhs. 20, 72; CBY RSOF ¶ 352) The presence on the Site of Government-owned equipment used to collect and dispose of tetryl dust, and CBY's discovery of more widespread tetryl dust contamination during the cleanup, together evidence that tetryl dust was released from Government-owned equipment and/or was disposed of at the Site.

  The Government disputes none of these facts. Indeed, it admits that it installed and owned tetryl dust collectors at the Site, that tetryl was used in the Site's manufacturing processes, and that CBY incurred response costs to remove tetryl from the Site. (Gov't SSOF ¶¶ 142, 153, 155, Exhs. 5, 20, 54, 82) The Government nevertheless argues that summary judgment should be denied because no evidence definitively proves a disposal or release of tetryl dust from Government-owned equipment. (Gov't Opp. Br. at 9) That is insufficient to raise a triable issue of fact. Tetryl dust does not appear from nowhere. The undisputed fact that tetryl was located at the Site establishes that a release and/or disposal occurred. CBY RSOF ¶ 352. In the absence of any contrary evidence, the Court should conclude as a matter of law that the tetryl dust was released from the Government-owned equipment that was specifically intended and used to collect and dispose of tetryl dust at the Site.

8

CBY RSOF ¶ 355.  The Government identifies no evidence to the contrary and thus fails to carry its evidentiary burden.

The Court should therefore find as a matter of law that the Government is liable as an "owner" of facilities from which tetryl dust was released.  Alternatively, the Court also should find the Government is liable as a matter of law as an "arranger," because it owned and provided the tetryl used at the Site to manufacture explosives, the Government owned the equipment used for the purpose of disposing of the tetryl byproduct, and the Government also knew that disposal of tetryl dust on Site was an inherent part of the munitions manufacturing process.

### D. The Government is Liable in Connection with TCE Contamination.

The Government does not dispute that it owned at least one degreasing tank installed and used at the Site.  (US SSOF ¶¶ 65-66, Ex. 28; Gov't Opp. Br. at 10)  It also is undisputed that trichloroethylene (TCE) was routinely used for degreasing, that TCE is a hazardous substance, and that TCE was detected at the Site during the cleanup.  (CBY SOF ¶¶ 94-96)  The Site's degreasers, including the Government-owned degreasers, are the only potential source for the release of TCE at the Site.  CBY RSOF ¶ 356.  Accordingly, these uncontroverted facts satisfy CBY's evidentiary burden on summary judgment and establish the Government's liability as an "owner" of a facility from which TCE released and/or as an "arranger" because the Government knew that TCE would be disposed of at the Site.

In response, the Government argues that disputed facts preclude summary judgment because from "October 1941 through the end of the war, TCE could only be used in vapor degreasers" and the Government-owned degreasers were not "vapor degreaser[s]." (Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Gov't Br.") at 56). This tidbit of historical trivia generates no disputed issues of material fact. Whatever the regulations may have required in 1941 or afterward is irrelevant, because the uncontroverted evidence proves that TCE was present on the Site and that CBY incurred costs to clean it up. CBY RSOF ¶ 363.

The TCE must have come from *somewhere* and all of the evidence points to the Government-owned facilities at the Site. Because the degreaser tanks at the Site, including the Government-owned degreaser tanks, are the only potential TCE source at the Site, CBY's evidentiary showing satisfies its burden on summary judgment. The Government identifies no contrary evidence that TCE could have been released from any other facility at the Site. Accordingly, no triable issue of fact is presented and the Court should grant CBY's Motion.

     **E.**    **The 1954 Explosion Resulted in Releases and/or Disposals of Hazardous Substances at the Site.**

In 1954 a massive explosion ripped through the Site, resulting in widespread deposition of hazardous substances throughout the Site. (CBY SOF ¶¶ 117, 124) Specifically, the explosion caused AN-M69 bomb bodies, flares, 20MM ammunition, M204A1 fuzes, and land mines to be deposited throughout the Site. (Gov't SSOF ¶

124; CBY RSOF ¶ 368). Amid the detritus of the explosion, Government-owned facilities (such as Government-owned grenade fuses, AN-M69 bomb bodies, flares, 20MM ammunition, M204 fuzes, and land mines), in addition to many other facilities and substances, were strewn across the property, where they remained until CBY's removal operations. (CBY SOF ¶¶ 118-124; CBY RSOF ¶ 368) The 1954 explosion establishes the Government's liability because, irrespective of the cause of the conflagration, the widespread dispersal of Government-owned grenade fuses and other Government-owned munitions, explosives, land mines, and flares throughout the Site was a massive "release" of hazardous substances at or from Government-owned facilities. CBY incurred substantial removal costs as a result.

      The Government's Opposition misses the point. The Government does not appear to dispute that Government owned facilities exploded or were otherwise blasted out of containment and into the air and onto the soil of the Site. Instead, the Government's argument fixates on lingering, decades-old disputes about the cause of the 1954 explosion. (Gov't Opp. Br. at 15) This is all non-sequitur. The cause of the explosion is irrelevant in the context of CERCLA's strict liability regime. Thus, it is immaterial that one document may refer to "government-owned" fuses in the building where the explosion originated, whereas another document may refer to "company-owned" fuses in the same building, (Gov't Opp. Br. at 15-16), because the fact remains that Government-owned fuses (and other ordnance) were destroyed as a result and their dispersal spread hazardous substances throughout the Site. (Gov't

11

SSOF ¶ 122.) Since that point appears to be undisputed (and is indisputable in any event), and the Government identifies no evidence to the contrary, summary judgment is appropriate as to liability stemming from the 1954 explosion as well.

### F. The Government's Other Arguments Are Misplaced.

The Government argues that CBY is not a bona fide prospective purchaser and that certain of CBY's response costs were not incurred in a manner consistent with the National Contingency Plan ("NCP"). Both arguments are misplaced.

#### 1. The Government raises no triable issues of fact regarding CBY's bona fide prospective purchaser status.

Whether or not CBY is a bona fide prospective purchaser is irrelevant to the Government's liability as a responsible party, and this issue already has been extensively addressed in prior briefing. (*See* Dkt. No. 54). CBY accordingly incorporates by reference its prior arguments, which need not be restated here. However, the Government now asserts several new points and attempts to change its theory regarding CBY's satisfaction of the "All Appropriate Inquiries" requirement for bona fide prospective purchaser defense. These belated efforts to challenge CBY's bona fide prospective purchaser status are meritless.

As to the "All Appropriate Inquiries" requirement, the Government had previously argued that CBY could not be a bona fide prospective purchaser because CBY had not used the ASTM1527-05 standard when evaluating the Site. As argued in CBY's prior briefing, that argument is demonstrably wrong because the applicable

regulations at the time required CBY to use entirely different standards: either ASTM1527-97 or ASTM1527-00.  The Government now correctly (albeit only tacitly) concedes that its prior argument is incorrect and asserts, for the first time, that CBY failed to comply with the requirements of ASTM1527-97 and ASTM1527-00.  This new effort fares no better.  The Government asserts in conclusory fashion that the Conceptual Remedial Action Work Plan performed by CBY's contractor did not satisfy the requirements of either the 1997 or 2000 ASTM1527 standards.  (Gov't SOF 67-68).  However, CBY's contractor followed the 2000 ASTM1527 standard and the Government makes no effort to demonstrate that CBY failed to follow any particular requirement of the standard.  Nor could it do so, since CBY's compliance with the 2000 standard is comprehensively documented and was fully set forth in CBY's Opposition Brief at 25-26 and CBY SOF ¶¶ 194-209.

      The Government also asserts that, even though it "did not move for summary judgment on the remaining [bona fide prospective purchaser] elements, there is at least a question of fact regarding whether CBY has satisfied the '*continuing obligations*' elements."  Gov't Opp. Br. at 40 (emphasis in original); Gov't SSOF ¶¶ 395-396.  According to the Government, the inability of an expert to recall "specific documentation that demonstrated CBY's fulfillment of these" purported "continuing obligations elements" is somehow relevant to CBY's entitlement to the bona fide prospective purchaser defense and presents a triable issue of fact.

13

Not only is the Government's "continuing obligations" argument unsupported by admissible evidence, it is similarly unsupported by the authorities cited. See CBY RSOF ¶¶ 395-96. Undeterred, the Government premises its contention on the misguided notion that CBY must have a "continuing obligations plan;" however, no such plan is required. Rather, the "continuing obligations," as contemplated by the applicable ASTM standards (the source of this requirement) requires only that the party comply with the implemented remediation plans in place at the site and place the appropriate restrictions on the property at the conclusion of the remediation. This is exactly what CBY has done (and will do) (see CBY RSOF ¶¶ 395-96), and the Government's misguided and unsupported contention presents no disputed issue of material fact that precludes summary judgment.

As far as can be discerned, the Government appears to be referring to a statement by its own expert to the effect that, in the expert's opinion, CBY should have implemented something the expert called a "continuing obligations plan." (Dkt. 56-2 ¶ 395.) Assuming that is correct, and insofar as the Government intends to refer to CBY's exercise of appropriate care to address the potential for continuing or future releases at the Site, CBY has already addressed its extensive efforts in prior briefing [Dkt. 54], which arguments are expressly incorporated. (Dkt. 54 at 17-20; CBY SOF ¶¶ 220-261). The Government fails to identify any concrete evidence that CBY failed to take all appropriate actions at the Site with respect to the potential for continuing

or future releases. There is therefore no triable issue of disputed fact and the Court should grant CBY's Motion.

### 2. Compliance with the NCP is irrelevant at this stage.

Finally, whether CBY's response costs were necessary and consistent with the NCP is irrelevant to the Government's liability and need not be considered at this stage of the litigation. "[C]onsistency with the NCP is not an element of CERCLA liability, but rather, a factual issue effecting which response costs Plaintiffs may recover." *Basic Management Inc. v. U.S.,* 569 F. Supp. 2d 1106, 1121 (D. Nev. 2008); *T & E Industries, Inc. v. Safety Light Corp.*, 680 F. Supp. 696, 709 (D.N.J. 1988) ("While the determination of whether such costs were 'necessary' and 'consistent with the National Contingency Plan' does preclude this Court from entering summary judgment as to specific amounts of the costs, the question of amount can be dealt with at a later time" and does not preclude summary judgment on liability.") Moreover, the Government does not (and cannot) dispute that at least *some* of CBY's response costs were incurred consistent with the NCP. No more is necessary at this stage in order to conclude that the Government is liable for response costs as a matter of law. The final tabulation of the response costs for which the Government is liable is not yet before the Court.

## III. CONCLUSION

For the foregoing reasons, and those in CBY's Moving and Opposition Briefs, this Court should grant CBY's motion for summary judgment in its entirety.

Respectfully submitted,

*/s/ Stephanie R. Feingold*
John McGahren
Stephanie R. Feingold
Mark A. Fiore
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
609.919.6641 (phone)
609.919.6701 (fax)
mark.fiore@morganlewis.com
*Attorneys for Plaintiff Cranbury Brick Yard, LLC*

Dated:  January 12, 2018