UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRANBURY BRICK YARD, LLC, | : |
| Plaintiff, | : Civil Action No. 15-2789 (BRM)(LHG) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, *et al.* | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are (1) Defendants the United States of America, the United States Department of the Navy (the "Navy"), and the United States Department of the Army's (the "Army") (together, the "United States" or the "Government") Motion for Summary Judgment (ECF No. 49) and (2) Plaintiff Cranbury Brick Yard, LLC's ("CBY") Motion for Summary Judgment (ECF No. 51). Both motions are opposed. (ECF Nos. 54 & 56.) Having reviewed the parties' submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the United States' Motion for Summary Judgment is **GRANTED**, and CBY's Motion for Summary Judgment is **DENIED**.

### I. BACKGROUND

In this lawsuit brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675, *et seq.* ("CERCLA"), CBY seeks to recover costs under CERCLA Section 107(a), 42 U.S.C. § 9607(a), or, alternatively, for contribution under CERCLA Section 113(f), 42 U.S.C. § 9613(f) for

cleanup of pollution at the former Unexcelled Chemical Corporation ("Unexcelled") site (the "Site") Cranbury, New Jersey. (Compl. (ECF No. 1).) CBY is a Delaware limited liability company with its principal place of business in Highlands Ranch, Colorado. (Pl.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. (ECF No. 52-1) ¶ 1; Ds.' Resp. to Pl.'s Statement of Material Facts (ECF No. 57-2) ¶ 1.) The Site consists of 395 acres in Cranbury, New Jersey. (ECF No. 52-1 ¶ 2; ECF No. 57-2 ¶ 2.) For portions of the years 1942 to 1954, the Site was used as a United States military ordinance assembly and loading facility.[1] (ECF No. 52-1 ¶ 3; ECF No. 57-2 ¶ 3.) Unexcelled contracted with the United States military to assemble various munitions during World War II and the Korean War.[2] (Ds.' Statement of Material Facts in Supp. of their Mot. for Summ. J. (ECF No. 50-1) ¶ 2; ECF No. 55-1 ¶ 2.) The Site became contaminated with munitions and explosives of concern ("MEC") and other contaminants. (ECF No. 50-1 ¶ 3; ECF No. 55-1 ¶ 3.) In 1954, an explosion occurred at the Site, and manufacturing ceased. (ECF No. 52-1 ¶ 6; ECF No. 57-2 ¶ 6.)

In the years after the explosion, machinery and components were removed from the Site, and most of the buildings used in the manufacturing operation were razed to their foundations. (ECF No. 52-1 ¶ 7; ECF No. 57-2 ¶ 7.) In 1974, the Cranbury Development Corporation ("CDC") purchased the Site. (ECF No. 52-1 ¶ 9; ECF No. 57-2 ¶ 9.) Beginning in May 1988, the Site was under investigation due to contamination from ordinance production. (ECF No. 52-1 ¶ 10; ECF No. 57-2 ¶ 10.) In approximately 2003, CDC's financier, Credit Agricole Asset Management ("CAAM") hired URS Corporation to study the unexploded ordinance

---

[1] The Government contends Unexcelled also used the cite for the commercial production of fireworks. (ECF No. 57-2 ¶ 3.) CBY disputes this contention. (Pl.'s Resp. to Ds.' Statement of Undisputed Facts (ECF No. 55-1) ¶ 1.)

[2] CBY contends Unexcelled also contracted with the United States military for the loading, refurbishing, manufacture, and production of munitions. (ECF No. 55-1 ¶ 3.)

contamination on the Site. (ECF No. 52-1 ¶ 11; ECF No. 57-2 ¶ 11.)

On December 29, 2004, the New Jersey Department of Environmental Protection ("NJDEP") issued a Directive (the "Directive") stating there had been discharges of hazardous waste, primarily consisting of MEC from the 1954 explosion. (ECF No. 52-1 ¶ 12; ECF No. 57-2 ¶ 12.) The Directive named as Respondents (1) CDC as the Site's current owner, (2) Maxxam as a successor corporation to the Site's former owner, Unexcelled Manufacturing Company, Inc., and (3) the Navy as an owner and operator of the facilities located at the Site during and after World War II. (ECF No. 52-1 ¶ 13; ECF No. 57-2 ¶ 13.) The Directive also found the Navy held title at the Site to facilities constructed and installed under Contract Nord (F)-1089 (the "1089 Contract"), which was entered into in 1942 and which stated the Navy would provide funds to acquire plant equipment and facilities to produce military ordinance for the war effort. (ECF No. 52-1 ¶ 14; ECF No. 57-2 ¶ 14.) The Directive found Maxxam Group, Inc. ("Maxxam"), CDC, and the Navy were liable for cleanup and removal costs and the Site, and the NJDEP directed them to remediate the Site. ((ECF No. 52-1 ¶ 15; ECF No. 57-2 ¶ 15; ECF No. 50-1 ¶ 4; ECF No. 55-1 ¶ 4.)[3] The Navy responded to the Directive by stating it does not become actively involved in remedial efforts and would not participate in cleanup of the Site, but the Navy also stated it would work with NJDEP "to resolve any liability it may ultimately have at the . . . Site, if any." (ECF No. 52-1 ¶ 16; ECF No. 57-2 ¶ 16.)

On January 28, 2005, a Maxxam representative signed an Administrative Consent Order ("2005 Order") with the NJDEP. (ECF No. 50-1 ¶ 6; ECF No. 55-1 ¶ 6.) The 2005 Order provided:

> It is the intent of the [parties] that this Administrative Consent

---

[3] Defendants state "[t]he Directive was issued under New Jersey state statutes and any requirement contained in the Directive was pursuant to state law." (ECF No. 57-2 ¶ 15.)

> Order constitutes an administrative settlement within the meaning of CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) and is intended to resolve the liability of [CDC] and Maxxam to the State of New Jersey for some or all of a response action as related to the investigation, remediation and Remedial Work described in this Administrative Consent Order at the Site.

(ECF No. 50-1 ¶ 8; ECF No. 55-1 ¶ 8.) The 2005 Order also provided NJDEP, CDC, and Maxxam intended the document to constitute an administrative settlement under 42 U.S.C. § 9613(f)(2) "for the purpose of providing protection from contribution actions or claims under CERCLA as a result of releases of hazardous substances at the Site as described in [the] Administrative Consent Order and Scope of Work." (ECF No. 50-1 ¶ 9; ECF No. 55-1 ¶ 9.) The 2005 Order also stated NJDEP would not sue any signatories to the Order "under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with respect to response actions for the investigation, remediation and Remedial work described in [the 2005 Order]."[4] (ECF No. 50-1 ¶ 11; ECF No. 55-1 ¶ 11.) NJDEP's covenant not to sue is "conditioned upon . . . satisfactory performance of [the signatories'] obligations under [the 2005 Order]." (ECF No. 50-1 ¶ 12; ECF No. 55-1 ¶ 12.) The 2005 Order provided Maxxam and CDC would perform a remedial action at the Site and reimburse NJDEP for its oversight costs. (ECF No. 50-1 ¶ 13; ECF No. 55-1 ¶ 13.)

On July 18, 2005, CBY and CDC entered into a Purchase and Sale Agreement under which CBY agreed to pay $5,500,000 for the Site pending the result of due diligence. (ECF No. 50-1 ¶¶ 14-15; ECF No. 55-1 ¶¶ 14-15.) On January 11, 2006, CDC executed a Bill of Sale and Assignment, which transferred title to the Site to CBY. (ECF No. 50-1 ¶ 17; ECF No. 55-1 ¶ 17.) On January 27, 2006, CBY executed and Amendment to the 2005 Order (the "2006

---

[4] CBY points out NJDEP's "covenant not to sue is expressly in consideration of CDC and Maxxam's status as 'covered persons' under CERCLA entering into the [2005 Order]." (ECF No. 55-1 ¶ 11.) CBY further contends New Jersey's "covenant not to sue did not release CDC and Maxxam from any liabilities or obligations CDC and Maxxam may have pursuant to any other authority." (*Id.*)

Amendment"; together with the 2005 Order, the "Order"). (ECF No. 50-1 ¶ 30; ECF No. 55-1 ¶ 30.)

The parties dispute the effect of 2006 Amendment. The Government argues "[t]he 2006 Amendment removed [CDC] and its shareholder, Credit Lyonnais Asset Management, from the 2005 Order and replaced them with CBY." (ECF No. 50-1 ¶ 31.) CBY contends the 2006 Amendment "removed CDC and its financier, CAAM, from the 2005 Order" for the purposes of CBY's voluntary assumption of those parties' cleanup obligations but "did not convert CBY to a party that was responsible for the Site contamination." (ECF No. 55-1 ¶ 31.) On February 16, 2006, all parties to the 2006 Amendment, including NJDEP, signed it. (ECF No. 50-1 ¶ 32; ECF No. 55-1 ¶ 32.) The Government maintains all CBY's costs since the 2006 Amendment were incurred pursuant to and were related to the 2005 Order. (ECF No. 50-1 ¶ 33.) CBY does not dispute that contention but argues the Order "is an administrative requirement for all State-led cleanups, and not a legal directive." (ECF No. 55-1 ¶ 33.) The 2006 Amendment states the amendment "shall become part of" the 2005 Order, and also provides that the 2005 Order's original terms "shall remain in full force and effect." (ECF No. 50-1 ¶ 34; ECF No. 55-1 ¶ 34.) The 2006 Amendment requires CBY and Maxxam to comply with the terms of the 2005 Order, including the responsibility for the Site's remediation. (ECF No. 50-1 ¶ 35; ECF No. 55-1 ¶ 35.)

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

CBY is currently conducting remediation of the Site pursuant to the 2005 Order. (ECF No. 52-1 ¶ 28; ECF No. 57-2 ¶ 28.) CBY contends it incurred response costs through September 30, 2017, totaling $56,394,881. (ECF No. 52-1 ¶ 33.) The Government disputes CBY's claimed costs on the basis that CBY's Supplemental Report of its accounting expert is inadmissible hearsay. (ECF No. 57-2 ¶¶ 32-33.) The Government contends the issues of "whether any of CBY's response costs are recoverable, and in what amount, is a question of fact for trial." (*Id.*)

On April 20, 2015, CBY filed the Complaint, asserting a claim for recovery pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)(4)(B) (First Claim), and in the alternative, a claim for contribution pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) (Second Claim). (ECF No. 1.) On July 7, 2015, the United States filed a Motion to Dismiss (ECF No. 12), which the Court denied (ECF No. 21). On January 8, 2016, the United States filed the Answer, asserting a counterclaim for CERCLA contribution under 42 U.S.C. § 9613(f)(1). The parties' motions for summary judgment followed. (ECF Nos. 49 & 51.)

II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a

genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. The United States' Motion for Summary Judgment

The Government argues it is entitled to summary judgment on three issues. First, it contends it is entitled to summary judgment on CBY's claim for recovery pursuant to 42 U.S.C. § 9607(a)(4)(B), because CBY's entry into the Order restricts its claims to one for contribution under 42 U.S.C. § 9613(f)(3)(B). (D.'s Br. in Supp. of its Mot. for Summ. J. (ECF No. 50) at 1.) Second, the Government maintains CBY's claim for contribution is time-barred. (*Id.* at 2.) Third, the Government argues it is entitled to summary judgment on the issue of CBY's liability as a "bona fide prospective purchaser" ("BFPP"). (*Id.*) The Court considers these arguments in turn.

##### 1. CBY's Claim for Recovery

"CERCLA provides two mechanisms that allow potentially responsible parties ("PRPs") to recover costs they have expended to decontaminate a polluted site: § 107(a) cost recovery claims and § 113(f) contribution claims." *Agere Sys., Inc. v. Advanced Environmental Tech. Corp.*, 602 F.3d 204, 216 (3d Cir. 2010). A recovery claim brought pursuant to § 107(a) allows "for complete cost recovery under a joint and several liability scheme." *Id.* at 217 (citation omitted). Congress amended CERCLA to add § 113, including § 113(f), which allows a PRP to

"seek contribution from another PRP during or following a CERCLA suit brought against the first PRP." *Id.* (citations omitted).

The Government argues CBY is limited to a contribution action, not a claim for recovery, because the 2005 Order constituted an administrative settlement with the NJDEP that resolved CBY's potential CERCLA liability arising from its status as the Site's owner. (ECF No. 50 at 10.) The 2005 Order expressly resolved the potential CERCLA liability of CDC and Maxxam. (*Id.* (citing ECF No. 50-1 ¶ 8).) The 2006 Amendment replaced CDC and CAAM "with CBY as a Respondent to the [2005 Order]." (ECF No. 50-1 ¶ 31.) The 2006 Amendment also provides the amendment shall be incorporated into the 2005 Order, and the latter "shall remain in full force and effect." (*Id.* ¶ 34.)

CBY disputes the Government's argument and contends it undertook cleanup at the Site voluntarily and not pursuant to "a settlement with a State." (Pl.'s Br. in Opp. to D.'s Mot. for Summ. J. (ECF No. 55) at 7.) CBY also argues the 2006 Amendment is not a settlement between CBY and NJDEP because the 2006 Amendment is silent as to resolving CBY's potential liability. (*Id.* at 9.) CBY maintains it did not assume the prior owners' position in every respect merely by signing the 2006 Amendment. (*Id.* at 10.) CBY argues it could not, for example, take the prior owners' place as a "covered person" subject to CERCLA's requirements. (*Id.*) CBY also claims it could not benefit from the prior owners' contribution protection as set forth in the 2005 Order. (*Id.* at 11.)

The Court finds the 2006 Amendment constituted a settlement between CBY and NJDEP and CBY cannot bring a recovery claim. The Third Circuit has held "that plaintiffs . . . who if permitted to bring a § 107(a) claim would be shielded from contribution counterclaims under § 113(f)(2), do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a

9

CERCLA suit." *Agere*, 602 F.3d at 229. As noted, the 2006 Amendment provides the 2005 Order remains in full force and effect. CBY does not dispute the Government's argument that pursuant to the 2005 Order and the 2006 Amendment, NJDEP has agreed not to sue CBY based on its status as owner of the Site. As the owner of the Site, CBY is a "covered person" under 42 U.S.C. § 9607(a)(1) and liable unless it proves it is a BFPP. The Order relieved CBY of liability to NJDEP without showing it is a BFPP. Because CBY effectively settled its potential liability with NJDEP, it is limited to a claim for contribution. The fact CBY entered into the 2006 Amendment voluntarily is of no moment. *See Bernstein v. Bankert*, 733 F.3d 190, 210 (7th Cir. 2013) ("CERCLA does not ask whether a person incurs costs voluntarily or involuntarily.")

Therefore, the Court finds CBY may not bring a claim for recovery pursuant to § 107(a) of CERCLA, and the Government's Motion for Summary Judgment on this issue is **GRANTED**.

### 2. Whether CBY's Contribution Claim is Time-Barred

Pursuant to 42 U.S.C. § 9613(g)(3), a contribution claim must be filed no more than three years after:

> (A) the date of judgment in any action . . . for recovery of such costs or damages, or
>
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimus settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

CBY argues "CERCLA is silent on the applicable statute of limitations for contribution actions that do not arise outside of these . . . triggering events." (ECF No. 55 at 14.) CBY contends the statute of limitations for a contribution claim arising from its "voluntary" cleanup is unsettled. (*Id.*) In circumstances where the statute of limitations is uncertain, CBY argues, courts adopt the longer six-year statute of limitations allowed for recovery claims. (*Id.* at 15 (citing *Geraghty &*


10

*Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 924-25 (5th Cir. 2000) (adopting the six-year statute of limitations in section 113(g)(2) in an initial contribution action because none of section 113(g)(3)(B) triggering events had occurred); *Sun Co. v Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997 (same)).)

In response, the Government argues the cases upon which CBY relies are inapposite because they predate the Supreme Court's decisions in *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161-63 & n.3 (2004) and *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007). (D's Reply Br. in Supp. of the Mot. for Summ. J. (ECF No. 62) at 5-6.) In *Cooper Indus.*, the Supreme Court held a party can bring a claim under 42 U.S.C. § 9613(f)(1) only if the party has been the subject of a civil action under 42 U.S.C. §§ 9606 or 9607(a). 543 U.S. at 168-70. The Court left open the question of whether a party who has not been subject to an action under §§ 9606 or 9607(a) could assert a claim under 42 U.S.C. § 9607(a) to recover voluntary cleanup costs from other liable parties. *Id.*

In *Atlantic Research*, the Court reached that question and held a plaintiff may assert a claim pursuant to 42 U.S.C. 9607(a) to recovery voluntary cleanup costs from other PRPs. 551 U.S. at 161-63. The Court declined to decide whether a PRP could recover mandatory costs incurred after a consent decree in an action for recovery or for contribution. *Id.* at 139 n.6. However, the Third Circuit has since concluded that a party "who if permitted to bring a § 107(a) claim would be shielded from contribution counterclaims under § 113(f)(2), do[es] not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit." *Agere*, 602 F.3d at 229.

The Government argues *Cooper Indus.*, *Atlantic Research*, and *Agere*, all of which were decided after *Geraghty & Miller, Inc.* and *Sun Co.*, have sharpened the distinction between

11

CERCLA claims for recovery and claims for contribution. (ECF No. 62 at 6.) The Court agrees. *Agere* in particular demonstrates a party's choice of remedy, and therefore which statute of limitations applies, is proscribed more than CBY argues. As for whether *Agere's* holding, which pertains to consent decrees, applies to the Order, which is an administrative order, the Court finds that it does. The 2005 Order expressly provides that it is "an administrative settlement within the meaning of . . . 42 [U.S.C.] § 9613(f)(2) for the purpose of providing protection from contribution actions or claims under CERCLA." (ECF No. 50-1 ¶ 9.)

Because the Court finds CBY is limited to a recovery claim, it likewise finds the applicable statute of limitations is three years. In the aftermath of Congress' amendment of CERCLA to allow PRPs to assert contribution claims, Courts have recognized "a design to codify one limitations period for contribution actions and another period for cost-recovery actions." *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 558 (6th Cir. 2007); *see also Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 609 (8th Cir. 2011); *see also New Castle County v. Halliburton, NUS*, 1116, 1124 (3d Cir. 2006) (applying a three-year statute of limitations to a section 113 contribution claim).

The logical date on which the statute of limitations began to run is February 16, 2006, when all parties to the 2006 Amendment, including NJDEP, signed it. (ECF No. 50-1 ¶ 32; ECF No. 55-1 ¶ 32); *see Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F3d 757, 775 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1161 (2015) (finding the effective date of an administrative consent order is the triggering event for the statute of limitations). CBY's contribution claim (Second Claim) was untimely as of February 16, 2009, more than six years before CBY filed the Complaint on April 20, 2015.

Therefore, the Court finds CBY's claim for contribution pursuant to Section 113(f)(3)(B)

of CERCLA was untimely filed and the Government's Motion for Summary Judgment on this issue is **GRANTED**.

### 3. CBY's Status as a BFPP

CERCLA provides an exemption to liability for BFPPs. 42 U.S.C. § 9607(r). In order to qualify as a BFPP, a party must prove by a preponderance of the evidence all eight of the criteria set forth in 42 U.S.C. § 9601(40). *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F. Supp. 431, 498-99 (D.S.C. 2011), *aff'd* 714 F.3d 161 (4th Cir. 2013). The Government seeks summary judgment on four of the eight criteria, which it argues CBY cannot prove as a matter of law. (ECF No. 50 at 33.) The four criteria at issue are:

> (1) [a]ll disposal of hazardous substances at the facility occurred before the person acquired the facility[,]
>
> (2) [t]he person made all appropriate inquiries into the previous ownership and uses of the facility in accordance with generally accepted good commercial and customary standards and practices
>
> (3) [t]he person exercise[d] appropriate care with respect to hazardous substances found at the facility . . . [,] and
>
> (4) [t]he person is not . . . affiliated with any other person that is potentially liable for response costs through . . . any contractual, corporate, or financial relationship

(*Id.* (quoting 42 U.S.C. § 9601(40)(A), (B)(i), (D), (H)(i)).)

The Court first considers whether "[a]ll disposal of hazardous substances at the facility occurred before [CBY] acquired the facility." 42 U.S.C. § 9601(40)(A). The Government argues CBY cannot satisfy this prong, in part, because on July 25, 2013, "CBY's contractors ruptured an underground storage tank releasing twenty gallons[5] of 'unknown petroleum product' into the soil." (ECF No. 50 at 40 (citing ECF No. 50-1 ¶¶ 42-43).) The Third Circuit has found

---

[5] CBY disputes this assertion only insofar as the "twenty gallons" represented an estimate and not a precise measurement. (ECF No. 55-1 ¶ 42.)

13

"disposal" for purposes of BFPP status "includes not only the initial introduction of contaminants onto a property but also the spreading of contaminants due to subsequent activity." *United States v. CDMG Realty Co.*, 96 F.3d 706, 719 (3d Cir. 1996). The Third Circuit also found any disposal, however small, meets the statutory definition. *Id.* (stating "dispersal of contaminants need not reach a particular threshold level in order to constitute 'disposal'"). A "disposal" takes place even when a party "remove[s] . . . contaminated soil from the [site], combine[s] and stockpile[s] those soils, then spread[s] the soil back on the [site].] *Bonnieview Homeowners Ass'n v. Woodmount Builders, L.L.C.*, 655 F. Supp. 2d 473, 490-92 (D.N.J. 2009).

Here, after the petroleum product discharge, CBY's contractors excavated about 300 cubic yards of contaminated soil and stockpiled it at the Site. (ECF No. 50-1 ¶ 45; ECF No. 55-1 ¶ 45.) The "contaminated soils associated with the storage tank incident were mixed with non-contaminated soils" and used as fill on the Site. (ECF No. 50-1 ¶ 46; ECF No. 55-1 ¶ 46.) CBY argues the Government cannot show CBY acted negligently or that any additional contamination occurred. (ECF No 55 at 23.) CBY further argues the Government must show CBY acted negligently because a party conducting remediation is entitled to conduct soil investigation. (ECF No. 55 at 22-23 (citing *CDMG Realty Co.*, 96 F.3d at 706).)

The Court finds CBY's arguments unpersuasive. First, CBY's contractors' handling of the contaminated soil is very similar to the actions this Court found constituted a "disposal" in *Bonnieview Homeowners Ass'n*. 655 F. Supp. 2d at 490-92. Second, the Government need not show CBY was negligent because, unlike the party in *CDMG Realty Co.*, CBY was not conducting soil investigation when the tank was punctured. 96 F.3d at 706. Rather, CBY was performing activities related to construction on the Site. (ECF No. 62 at 13 n.7.)

The Court finds CBY cannot demonstrate it is a BFPP because disposal took place at the

Site during its ownership as defined by 42 U.S.C. § 9601(40)(A). Because a party must satisfy all eight BFPP criteria, the Court need not analyze the remaining three criteria the Government contests.

Therefore, the Court finds CBY cannot qualify as a BFPP as a matter of law, and the Government's Motion for Summary Judgment on this issue is **GRANTED**.

### B. CBY's Motion for Summary Judgment

CBY seeks summary judgment on two issues: (1) the Government's liability as an owner and arranger for the disposal of hazardous materials at the Site; and (2) CBY's status as a BFPP. (Pl.'s Br. in Support of Mot. for Summ. J. (ECF No. 52).) As to CBY's status as a BFPP, the Court has found CBY is not entitled to BFPP status as a matter of law. Therefore, CBY's Motion for Summary Judgment as to that issue is **DENIED**. As to the Government's liability as an owner and arranger, the Court has found (1) CBY's claim for recovery (First Count) is barred by its entry into the Order, and (2) CBY's claim for contribution (Second Count) was untimely filed. Because the Court has granted the Government summary judgment as to both of CBY's claims, the issue of the Government's liability is moot. *See Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) (noting the Constitution prohibits courts from rendering advisory opinions) (citation omitted). Therefore, CBY's Motion for Summary Judgment as to that issue is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (ECF No. 49) is **GRANTED**, and CBY's Motion for Summary Judgment (ECF No. 51) is **DENIED**. An appropriate Order will follow.


**Date: September 17, 2018**  /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE